EDWARD M. GILBERT, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Gilbert v. Commissioner
Docket No. 6426-72.
United States Tax Court
T.C. Memo 1976-104; 1976 Tax Ct. Memo LEXIS 299; 35 T.C.M. (CCH) 451; T.C.M. (RIA) 760104; April 1, 1976, Filed *299 Frank G. Raichle, for the petitioner. Larry Kars, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined a deficiency in the Federal income tax return of the petitioner in the amount of $1,467,536.51 for the taxable year 1962. The issues for our decision are as follows: [1]
1. Whether the petitioner must include in his income for the taxable year 1962 unauthorized withdrawals that he made from E. L. Bruce Co., Inc. 2. If so, what amount, if any, is the petitioner entitled to deduct for repayments to E. L. Bruce Co., Inc. during the taxable year 1962. FINDINGS OF FACT Some of the facts have been stipulated. Such facts and the exhibits attached thereto, are incorporated herein by this reference. Edward M. Gilbert, (hereinafter sometimes referred to as "petitioner") resided in New York, New York at the time of the filing of his petition herein. He was a cash *300 basis taxpayer. For the taxable year 1962 he filed a Federal income tax return with the District Director of Internal Revenue, New York, New York. Prior to 1958 petitioner and some associates acquired a company known as Empire National Corporation which was engaged in the lumber supply business. In September of 1958, the petitioner and his associates acquired control of E. L. Bruce Co., Inc., which was engaged in substantially the same line of business. From September 1958 until June 12, 1962, the petitioner was first Chairman of the Executive Committee and later President, the principal executive officer and a director of E. L. Bruce Co., Inc. (hereinafter referred to as the "Bruce Company") and its predecessor corporations. During this same period the petitioner was also the major stockholder of the Bruce Company and the principal executive officer of Rhodes Enterprises, Inc., all of whose issued and outstanding stock he beneficially owned. Petitioner also beneficially owned and controlled the Empire Hardwood Flooring Corporation. In 1961 and 1962 the petitioner personally and Rhodes Enterprises, Inc. undertook the purchase of a large number of shares of the Celotex Corporation. *301 All such stock acquired by the petitioner and Rhodes Enterprises, Inc. was purchased on margin. Petitioner pledged all of his stock of the Bruce Company as collateral for loans to purchase Celotex stock. At the regular meeting of the board of directors of the Bruce Company on January 8, 1962, the petitioner read the following statement: I wish to advise you in strictest confidence, of what I believe may prove at some future time to be a matter of great importance to the Bruce Company. For a number of years, I have been investigating the business and potential of the Celotex Corporation, with which I think you are all generally familiar. Celotex has about 1,000,000 shares of common stock outstanding, the current market being about 33. The Company has a book value greatly in excess of the present market, and I believe it offers a great profit potential which is not now being realized. Over the course of the last year or so, I have acquired about 50,000 shares of Celotex stock at an average cost of between 30-32 a share, or an aggregate cost somewhat in excess of $1,500,000. It is my present belief that if a substantial amount of Celotex stock were held in friendly hands it might *302 be possible at some future date to offer Bruce stock, securities and cash in exchange for the outstanding Celotex shares, but I believe that such an exchange offer at the present time would be risky and not timely. However, should the Board be of a different view, I am prepared to offer Bruce my present Celotex holdings at my cost. If the Board does not wish to acquire these holdings at this time I may dispose of them elsewhere. However, if at any future time the Board determined that it was in the corporate interest to pursue the Celotex matter further and to propose an exchange of Bruce securities for Celotex shares, it would be my intention to make my holdings available to Bruce at my cost for the purpose of facilitating any such transaction. At that time it was the consensus of the directors present that the Bruce Company should not accept the petitioner's offer as set forth in the statement. On March 5, 1962, at the regular meeting of the board of directors of the Bruce Company, the petitioner read the following statement: At our meeting on January 8, 1962 I reported to you with respect to the Celotex Corporation. Since that date I have disposed of the 50,000 shares of common *303 stock of The Celotex Corporation I then owned but, presently, I expect to purchase additional shares and I wish to reiterate my offer to make any such shares available to this Corporation at my cost. On the basis of information presently available to me it appears that if a combination of this Corporation and The Celotex Corporation can be effected on a reasonable basis, such a combination would be in the best interests of this Corporation * * *
While I have not solicited any support from The Celotex Corporation shareholders, or made or received any commitments from any of them, a number of my friends and acquaintances agreeing with my appraisal of The Celotex Corporation have purchased a substantial number of shares. It is my belief that, at present, approximately 400,000 shares of the common stock of The Celotex Corporation, out of a total of 1,028,651 outstanding, are in the hands of persons who would favor a combination of it with this Corporation. * * * Pursuant to recommendations by petitioner and after some discussion, the board passed a resolution which stated: RESOLVED, that the Chairman of the Board, the President, and the Executive Vice President be, and each *304 hereby is, authorized to expend in the aggregate up to $400,000 of the funds of this Corporation to purchase shares of the Common Stock of The Celotex Corporation, at such price or prices as the officer expending such funds may deem advisable; that said officers be, and each hereby is, authorized to consult with Lazard Frers & Co. and Carl M. Loeb, Rhoades & Co., or either of them, to secure their recommendations with respect to the financial basis on which a combination of this Corporation with The Celotex Corporation could be effected; that said officers be, and each hereby is, authorized to discuss the combination of this Corporation and The Celotex Corporation with the management of The Celotex Corporation; and that said officers be, and each hereby is, authorized to make such further investigations of The Celotex Corporation as the officer making the same may deem advisable. On April 17, 1962, at a special meeting of the board of directors of the Bruce Company, on the petitioner's suggestion, the board, RESOLVED, that the authorization to purchase $400,000 of stock of The Celotex Corporation granted at the Board of Directors meeting of March 5, 1962, be hereby increased by *305 $1,000,000., plus proceeds from the liquidation of non-current assets, plus the proceeds received from any increase in the Connecticut Mutual Life Insurance Company Note to the extent of $1,800,000; and RESOLVED, that any officer of the Corporation be authorized to open an account with Lazard Freres & Co., for the purpose of purchasing stock in The Celotex Corporation as authorized by the Board of Directors. In addition to the shares purchased by petitioner and Rhodes Enterprises, Inc., on margin, Bruce itself purchased substantial amounts of Celotex stock. Petitioner also induced friends and associates of his to purchase Celotex stock, guaranteeing them against loss. By the end of May 1962, among the Bruce Company, petitioner and his associates, 56 percent of the outstanding stock of Celotex was in hand and available for the merger. Negotiations for the merger had proceeded to the point in late May where it was agreed that certain directors of the Bruce Company would be placed on the board of Celotex. In late April 1962, petitioner went to Nevada to establish a residence in order to obtain a divorce. During the latter part of May 1962 while petitioner was still in Nevada, *306 there was a severe decline in the price of the stock of both Celotex and the Bruce Company. Petitioner was thereupon called upon to furnish additional margin for the Celotex stock purchased by him and his associates. Ostensibly, in order to provide the funds to meet these margin calls, petitioner caused a series of checks to be drawn on the account of the Bruce Company, payable to Rhodes Enterprises, Inc., or to Empire Hardwood Flooring Corporation, totaling $1,958,000. On June 5, 1962, Empire Hardwood Flooring Corporation repaid $5,000 of this amount. During this period, the petitioner also initiated negotiations to sell the stock of Celotex held by the Bruce Company, petitioner, and Rhodes Enterprises, Inc. to the Ruberoid Company. A meeting of the board of directors of Ruberoid Company was called to be held on June 12, 1962, in order to consider such proposal. On June 8, 1962, petitioner went to the office of Sherman, Sterling and Wright who were counsel for the Bruce Company at the time. Mr. Robert N. West, a partner in the firm, prepared promissory notes in the aggregate amount of $1,953,000, together with an assignment to the Bruce Company of all of petitioner's property, *307 both real and personal. The promissory notes executed by the petitioner were predated to coincide with the dates of the unauthorized withdrawals. The assignment executed by the petitioner on June 8, 1962, was predated May 28, 1962, and included cash in banks, stocks and other investments, real estate, paintings and other art objects, a stamp collection and various "participations." The fair market value of the cash, securities and other property assigned by the petitioner on June 8, 1962, to secure the promissory notes of the petitioner aggregating $1,953,000 substantially exceeded the face amount of said notes on June 8, 1962, and on June 12, 1962. A special meeting of the board of directors of the Bruce Company was held on June 12, 1962. At that meeting, Mr. Robert N. West informed the board of directors that petitioner had made or caused to be made a series of unauthorized withdrawals of the Bruce Company in the total amount of $1,953,000, describing the circumstances leading up to the withdrawals and the manner in which they were made. Mr. West also reported the negotiations with Ruberoid Company for the sale of the Celotex stock at a price of $36 per share, and informed *308 the board of directors that this offer had been rejected. The board of directors then requested and received the resignation of the petitioner as a director and president of the Bruce Company and the resignation of Irwin Polivy as secretary of the Bruce Company. Following a discussion of the possibility of recovery of the unauthorized withdrawals made by the petitioner, the board of directors instructed petitioner to continue his negotiations for the sale of the Celotex stock and to report back later that day. Thereupon, the minutes record the following: On motion, duly made and seconded, the following resolutions were unanimously adopted: RESOLVED, that the proper officers of the Corporation be and hereby are authorized and directed to request Peat, Marwick, Mitchell & Co., the Corporation's auditors, to conduct an examination of the Corporation's books and report to the Board at the earliest possible moment. FURTHER RESOLVED, that the proper officers of the Corporation be and they hereby are authorized and directed to inform the Regional Office of the Securities and Exchange Commission, the American Stock Exchange, the Connecticut Mutual Life Insurance Company and the Seaboard *309 Surety Company of the disclosures made to the meeting today. FURTHER RESOLVED, that the proper officers of the Corporation be and they hereby are authorized to release for publication the following statement: "Mr. E. L. Bruce, Jr., Chairman of E. L. Bruce Co. (Incorporated) announced that at a meeting of the Board of Directors held today Edward M. Gilbert has resigned as President and as a Director and that Mr. Bruce has been elected President. He will also continue as Chairman. Mr. Bruce stated that Mr. Gilbert's resignation followed his disclosure to the Board of Directors today that between May 28th and June 6th he had made unauthorized withdrawals from the Corporation in the amount of $1,953,000. He also reported that the Corporation had a surety bond in the amount of $750,000. Special counsel retained in connection with this matter, Bethuel M. Webster and Frederick Sheffield of Webster Sheffield Fleischmann Hitchcock & Chrystie, had been instructed to present the facts to the Securities & Exchange Commission and the American Stock Exchange. Mr. Bruce said that prospects for the company were bright and that sales are currently running approximately 30% above the levels of *310 last year." The Board then discussed measures which should be taken to protect the interests of the Corporation, and on motion, duly made and seconded, it was RESOLVED, that special counsel for the Corporation, be and they hereby are authorized and directed to consider the measures which should be taken to protect the interests of the Corporation as a result of the disclosures made to this meeting, and to take any and all action which they deem appropriate, including the bringing of legal action against Edward M. Gilbert. As a result of what transpired at the meeting of June 12, 1962, including the threat of possible criminal prosecution, petitioner flew to Brazil that evening. As a result of the ammouncement of petitioner's unauthorized withdrawals of funds from the Bruce Company and his flight to Brazil, there was a sharp decline in the market price of the stock of the Bruce Company. The stock had opened on the American Stock Exchange at a price of $19 per share and traded at a high of $20 per share. It thereafter traded as low as $14.75 per share and closed at $15.75 per share. On the following day, prior to the suspension of trading, the stock was changing hands in the range *311 of $10 to $10.50 per share. The stock of Celotex was likewise adversely affected. As a result, the Bruce Company stock and the Celotex stock owned by the petitioner and held as collateral or in margin accounts were sold. Neither the Bruce Company nor the petitioner realized any funds as a result of such sales. On June 13 or June 14, 1962, the Bruce Company attempted to file petitioner's assignment. The Bruce Company was informed by the County Clerk's office that there would be a filing fee of between $10,000 and $15,000 for the mortgage recording tax because real estate was included in the assignment. The Bruce Company chose not to pay the filing fee and, accordingly, did not file the assignment. Notices of Federal tax liens in the sum of $3,341,743.95 were filed on June 22, 1962, with respect to the income tax liabilities of petitioner and Rhoda Gilbert for the taxable years 1958, 1959, 1960 and 1962. The above liens were filed with respect to joint jeopardy assessments of income taxes made against Edward and Rhoda Gilbert for the taxable years 1958, 1959 and 1960 in the respective amounts of $3,836.40, $1,119,164.80 and $494,986.20. Also, a joint assessment was made June 25, 1962, in *312 the amount of $1,723,776. [2]
During the first week of November 1962, petitioner returned from Brazil to New York. On November 5, 1962, acknowledging an indebtedness to the Bruce Company of $1,953,000, petitioner executed a second assignment, this time omitting real property. On November 27, 1962, a consent judgment in favor of the Bruce Company in the sum of $1,953,000 plus interest was entered against petitioner. On September 25, 1964, pursuant to an indictment filed against the petitioner on June 28, 1962, in the United States District Court for the Southern District of New York, petitioner entered a plea of guilty to devising a scheme to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises from the Bruce Company in the amount of $1,953,000; to transporting and causing to be transported in foreign commerce from New York to Paris, France, securities and monies of a value in excess of $5,000, knowing the same to have been stolen, converted and taken by fraud; to failing to file with the American *313 Stock Exchange and the Securities and Exchange Commission a statement indicating petitioner's beneficial ownership in the Bruce Company and changes therein for the month of May 1962. On February 2, 1967, pursuant to an indictment for grand larceny, filed against petitioner on July 9, 1962, by a New York County grand jury, petitioner entered a plea of guilty to counts five, six and ten. Count five of the indictment charged: Said defendant, in the County of New York, on or about May 29, 1962, with intent to deprive and defraud another of property, and of the use and benefit thereof, and to appropriate the same to his own use, and to the sue of someone other than the true owner, stole property from E. L. Bruce Co. (Incorporated) having an aggregate value of $340,000, to wit, a check dated May 29, 1962, drawn on the account of E. L. Bruce Co. (Incorporated) at the Manufactures Hanover Trust Company, payable to the order of Rhodes Enterprises, Inc. Count six of the New York County indictment charged petitioner with the same charge as count five above with the exception that the date of the larceny was June 1, 1962, and the amount of the larceny was $490,000. Count ten of the New York *314 County indictment charged petitioner with the same charges as count five above with the exception that the date of the larceny was June 6, 1962, and the amount of the larceny was $287,000. For the fiscal year ended June 30, 1962, the Bruce Company claimed a loss deduction on its books and records which included the unauthorized withdrawals of $1,953,000. The respondent determined that the petitioner received income in the amount of $1,953,000 in the taxable year 1962 consisting of the unauthorized funds withdrawn from the Bruce Company and converted to personal use. The respondent also disallowed certain deductions for interest and taxes. OPINION In the taxable year 1962 the petitioner admittedly caused checks to be drawn on the account of the Bruce Company totaling $1,958,000, of which $5,000 was repaid. The balance of $1,953,000 was diverted to the petitioner's use. Under the doctrine of , petitioner is hereby chargeable with having realized income in the amount of his unauthorized withdrawals of funds from the Bruce Company. See also ; , *315 affg. per curiam a Memorandum Opinion of this Court; , revg. ; , affd. . Respondent has thus determined that petitioner realized the sum of $1,953,000 as taxable income in the year of the withdrawals. During the same taxable year, petitioner tendered to the Bruce Company promissory notes for the full amount of the unauthorized withdrawals, secured by an assignment of all of petitioner's assets, including cash in banks, securities (most of which were pledged as collateral), real estate, art works, a stamp collection, and other investments. At the time that petitioner tendered his notes and assignment to the Bruce Company, the fair market value of the assets exceeded the amount of the notes. It is a fair assumption that if the Bruce Company had elected to accept the petitioner's tender, a sufficient amount could have been realized to make it whole. However, the board of directors of the Bruce Company refused to accept the petitioner's notes and assignment in payment of the withdrawals. Being *316 threatened with possible criminal prosecution, the petitioner "panicked" and fled to Brazil. Upon disclosure of the petitioner's unauthorized withdrawals and flight to Brazil, the stocks of both the Bruce Company and of Celotex were adversely affected. Petitioner's "equity" in these stocks was wiped out. The Internal Revenue Service made jeopardy assessments against the petitioner for income taxes allegedly due totaling $3,341,743.95, thereby preventing the sale or realization by Bruce Company in the taxable year 1962 of the value of the other assets covered by the assignment. In filing the petition herein, counsel for the petitioner contended that the execution by the petitioner of the notes and the assignment of his assets to cover the amount of the unauthorized withdrawals resulted in a "consensual recognition" of his liability for such withdrawals, thereby negating the realization of income. Petitioner's position was predicated on the decision of this Court in . Unfortunately, our decision was reversed on appeal to the ). This Court is compelled to follow such reversal. , *317 affd., , cert. denied . The facts in this case are also distinguishable from the Buff case. There, the employer accepted Buff's offer of repayment in the first instance. In the case of the Bruce Company, petitioner's offer was rejected. The board of directors was unwilling to accept petitioner's notes and assignment in substitution for the Company's claim against the petitioner on account of the unauthorized withdrawals. Applying hindsight, it is apparent that the Bruce Company may have exercised poor judgment in its handling of the indebtedness due from the petitioner. If the Bruce Company had acted differently, the full amount may well have been recouped within the taxable year. The petitioner attempted to make full restitution. However, we cannot give him credit for his good intentions. Decision will be entered for the respondent.
Footnotes
1. The respondent in his notice of deficiency disallowed a deduction for interest in the amount of $41,076.66 and a deduction for taxes in the amount of $1,963.20. The petitioner has presented no evidence with regard to these deductions.↩
2. The 1958 assessment has been paid in full. The 1959 and 1960 deficiencies and penalty, as determined by the Tax Court, have been paid.↩